IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LORETTA A. HONEYCUTT     *
                                 *
          v.                        *    Civil No. JFM-06-0958
                                 *
BALTIMORE COUNTY, MARYLAND    *
                                 *
                             *****

MEMORANDUM

Plaintiff Loretta A. Honeycutt ("Honeycutt") has brought this action against defendant Baltimore County ("the County") alleging that her termination from the County's Bureau of Corrections violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. Before me now is the County's motion to dismiss or for summary judgment. For the following reasons, the motion is granted in part and denied in part.

I

The County's Bureau of Corrections hired Honeycutt as an office assistant on October 25, 1995. (Compl. ¶ 5). She served without incident for close to seven years, all the while receiving above-average evaluations from her supervisors. (*Id*. ¶¶ 5-6). All that changed beginning September 11, 2002, when tragedy struck her family. Her son murdered his common law wife, absconded with their child, and was eventually shot and killed by police officers. (*Id*. ¶ 6; County Br. at 4). Consumed by depression and post-traumatic stress disorder, Honeycutt did not return to work until November 6, 2002. (Compl. ¶¶ 7-8; County Br. at 4). From that point forward her attendance was punctuated with tardiness and absences. (Compl. ¶ 9; County Br. at 5). The County considered most of these instances to constitute "unexcused" leave, and over the

course of the next year it took progressive discipline against Honeycutt, including suspensions from work and culminating in her termination on November 24, 2003. (*See* Compl. ¶ 10; County Br. at 6-8, 11).

The parties agree that the reason the County considered Honeycutt's leave to be "unexcused" is that she frequently failed to follow a particular procedure for reporting her absences and tardiness. (*See* Compl. ¶ 9; County Br. at 6-7). This procedure was contained in a Memorandum of Understanding ("MOU") entered into between the County and the union to which Honeycutt belonged, the Federation of Public Employees, FPE/AFT, AFL-CIO, Local #4883. (County Br. at 6-7). It stated in full:

> An employee who is unable to report to work because of illness or injury is required to personally call the employee's supervisor (or the supervisor's designee), or have a member of the immediate family or designated representative call, within (1) hour prior to or one-half (1/2) hour after the time the employee was to report for duty, unless the delay is caused by a documented emergency.

(*Id*. at 7).

Honeycutt claims that she was not responsible for her noncompliance. Her depression was often so debilitating that she simply could not rise herself in the early morning hours to make the call, and even if she did, she would sometimes be incoherent on the phone. (Honeycutt Affidavit ¶ 2, Exhibit 1 to Honeycutt Opp. Br.). In those instances in which she did call and was coherent, she was not allowed to leave a message for her supervisor even though he frequently did not arrive in the office until after 8:00am, which was thirty minutes beyond her regular start time. (*Id*.). Given these difficulties, Honeycutt asserts that the County should have allowed her to take advantage of an alternative and more flexible reporting method that it provided its correction officers. (*Id*.). Instead of having to contact their supervisors directly and within a strict time window, these officers were able to call a 24-hour hotline and report any anticipated

absence or tardiness. (*Id.*). She alleges that the County permitted her to use the hotline before September 2002, but that after her extended absence it revoked this privilege even though it continued to extend it to her civilian co-workers. (*Id.*). The County denies this. (County Reply Br. at 5-6).

Finally, Honeycutt alleges that the County refused her request for a transfer to another position that would have better accommodated her need for intermittent leave. The County denies that Honeycutt requested a transfer, and states that even if she had, there were none available that would have fit her needs. (County Br. at 6).[1]

II

The FMLA provides two avenues of relief for employees who believe that their rights under the Act have been violated. *See* 29 U.S.C. § 2617. They can file their own private action against their employer, *id.* § 2617(a), or they can file a complaint with the Secretary of Labor, who has the statutory authority to enforce the Act, *id.* § 2617(b). Honeycutt pursued the latter option first, and attorneys for the Department of Labor then entered into a tolling agreement with the County that lasted until April 18, 2006. (Compl. ¶ 14). When the Department decided not to sue on her behalf, Honeycutt filed a complaint in this court on April 14, 2006. The complaint alleges that the County violated the FMLA in three ways. First, it denied her request for transfer

---

[1] Honeycutt also alleges in her affidavit submitted with her memorandum opposing the County's motion that the County denied her request to enroll in the County's one-year leave of absence program, which would have allowed her to be absent from the workplace without pay while still being considered a County employee. (Honeycutt Aff. ¶ 3). This allegation appears nowhere in the complaint. Thus, I express no opinion as to whether the County's alleged denial could constitute an FMLA violation. *See* 29 U.S.C. § 2615(a) (prohibiting an employer from interfering with an employee's attempt to take FMLA leave and from discriminating against, including discharging, an employee for taking or attempting to take FMLA leave).

3

to an equivalent position. Second, it imposed upon her "extraordinary requirements" for reporting her absences. Third, and finally, its progressive discipline and termination was in retaliation for her taking FMLA-protected leave, (*id*. ¶ 13). *See* 29 U.S.C. § 2615(a).

The County has responded by filing this motion to dismiss or for summary judgment. It advances two bases for dismissal: the statute of limitations has run, (County Br. at 10-11), and Honeycutt has failed to state a claim upon which relief can be granted, (*id*. at 11-13).[2] As for its motion for summary judgment, the County argues that the record evidence it appended to its memoranda establishes as a matter of law that the County's actions were taken for legitimate, non-discriminatory reasons, namely, Honeycutt's failure to comply with the MOU call-in procedure. (*Id*. at 13-14). I will address each argument in turn.

### III

An action brought under the FMLA generally is subject to a two-year statute of limitations. 29 U.C.S. § 2617(c)(1). The limitations period is extended to three years, however, for actions alleging a "willful" violation. *Id*. § 2617(c)(2). Honeycutt was terminated on November 24, 2003, (Compl. ¶ 10),[3] but she did not file her complaint until April 14, 2006. Facially, that places this action outside the two-year limitations period. The County argues that dismissal is therefore required because (1) Honeycutt has not alleged a willful violation; and (2)

---

[2] The County also argues in its initial memorandum that Honeycutt failed to exhaust her administrative remedies by not initiating the grievance procedure required under the Memorandum of Understanding between the County and Honeycutt's union. (County Br. at 14). The County does not provide any case law in support of this argument, and it does not discuss it all in its reply memorandum despite Honeycutt's counter-argument. I will therefore reserve judgment on this issue until such time as the County can provide a proper legal foundation for my consideration.

[3] The County claims that Honeycutt actually was terminated on December 23, 2003. (Country Br. at 11). This discrepancy is immaterial to resolving the statute of limitations issue.

she is not an intended beneficiary of the tolling agreement between the Department of Labor and the County. (County Br. at 10-11; County Reply Br. at 2-5). There is no need for me to reach the second issue because the County is wrong as to the first.[4]

When "a plaintiff sufficiently alleges facts supporting the claimed violation of the FMLA, a general averment as to willfulness should be sufficient to trigger the three-year limitations period.'" *Ungerleider v. Fleet Mortg. Group of Fleet Bank*, 329 F. Supp. 2d 343, 362 (D. Conn. 2004) (quoting *Settle v. S.W. Rodgers Co.*, 998 F. Supp. 657, 664 (E.D. Va. 1998)); *see also Williams v. Schuller Int'l, Inc.*, 29 Fed. Appx. 306, 308-09 (6th Cir. 2002) (treating the issue of willfulness as one to be resolved by the trier of fact); *Degan v. Goldwell of New England, Inc.*, 2006 U.S. Dist. LEXIS 4349, at *5-8 (D. Mass. Feb. 6, 2006) (same); *Majors v. Morgan Tire & Auto, Inc.*, 2005 U.S. Dist. LEXIS 35163, at *36-38 (S.D. Ga. Oct. 21, 2005) (same). Here, Honeycutt has done just that: "Although the County *knew* or reasonably should have known that the leave in question was FMLA qualified, and subject to protection of that statute, the County nevertheless used this leave as the basis for adverse personnel action . . . ." (Compl. ¶ 10 (emphasis added)). Thus, on the facts as pled by Honeywell, the three-year statute of limitations applies.

---

[4] Should it be determined at a later stage in the litigation that the County did not act willfully, the tolling agreement issue will need to be resolved. As such, it is incumbent upon me to flag now a material conflict between the parties' factual allegations concerning this issue. Honeycutt alleges that there was only a single tolling agreement that lasted until April 18, 2006. (Compl. ¶ 14). In contrast, the County claims that there were two tolling agreements, the first one lasting from November 17, 2005 to February 17, 2006, the second from February 17, 2006 to May 17, 2006. (County Reply Br. at 2). Appended to its reply memorandum are what the County claims are copies of the agreements. But both only talk about the Secretary of Labor's responsibility for enforcing the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., not the FMLA. Moreover, they state that the agreement only tolls "the statute of limitations set forth in Section 6 of the Portal to Portal Act," *id*. § 255, which applies to claims under the FLSA, not the FMLA.

IV

The County argues that Honeywell's allegations that she was denied a transfer and that the call-in procedure dictated by the MOU was "extraordinary" fail to state a claim under the FMLA. (County Br. at 11-13). Though I agree with the County as to the transfer denial, I disagree with respect to the MOU call-in procedure.

Contrary to Honeycutt's assertion, (Compl. ¶ 9 (citing 29 C.F.R. § 825.117)), the FMLA does not require that an employer provide an employee who needs to take intermittent leave with a more accommodating position. Rather, it states:

> If an employee requests intermittent leave, or leave on a reduced leave schedule . . . that is foreseeable based on planned medical treatment, *the employer may require* such employee to transfer temporarily to an available alternative position offered by the employer for which the employee is qualified and that—
>     (A) has equivalent pay and benefits; and
>     (B) better accommodates recurring periods of leave than the regular employment position of the employee.

29 U.S.C. § 2612(b)(2) (emphasis added); *see also* 29 C.F.R. § 825.117 ("Employees needing intermittent FMLA leave or leave on a reduced leave schedule must attempt to schedule their leave so as not to disrupt the employer's operations. In addition, an employer may assign an employee to an alternative position with equivalent pay and benefits that better accommodates the employee's intermittent or reduced leave schedule."). This provision does not provide employees an entitlement to a new position, but rather affords flexibility to employers faced with the disruption caused by employees who cannot work a regular schedule. Honeycutt's claim, to the extent it is based on the County's refusal to transfer her, must therefore be dismissed.

As for the MOU call-in procedure, the County relies upon the first half of an FMLA regulation promulgated by the Department of Labor: "An employer may also require an

employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave. For example, an employer may require that written notice set forth the reasons for the requested leave, the anticipated duration of the leave, and the anticipated start of the leave." 29 C.F.R. § 825.302(d); *see also Callison v. City of Philadelphia*, 430 F.3d 117, 121 (3d Cir. 2005) (stating that "[n]othing in the FMLA prevents employers from ensuring that employees who are on leave from work do not abuse their leave"); *Gilliam v. United Parcel Service, Inc.*, 233 F.3d 969, 972 (7th Cir. 2000) (explaining that "nothing in the FMLA or the implementing regulations prevents an employer from enforcing a rule requiring employees on FMLA leave to keep the employer informed about the employee's plans"). The County argues that all civilian employees were required to follow the MOU call-in procedure, and thus Honeycutt cannot challenge the County's insistence that she also adhere to the procedure. This argument is flawed for three reasons.

First, Honeycutt has alleged that the MOU call-in procedure was not the "usual and customary notice and procedural requirement[] for requesting leave" because the County permitted her co-workers to use the 24-hour hotline, (Compl. ¶ 9), and allowed her to use it prior to September 2002, (Honeycutt Aff. ¶ 3). Second, there is a third sentence in the regulation that the County cites which is relevant to this case but which the County fails to discuss: "However, failure to follow such internal employer procedures will not permit an employer to disallow or delay an employee's taking FMLA leave if the employee gives timely verbal or other notice." 29 C.F.R. § 825.302(d). This creates a factual question, unanswered at this stage in the litigation, as to whether the County received such notice. Finally, the regulation applies only in circumstances in which the employee's need for FMLA leave is *foreseeable*. *See generally id*. § 825.302.

7

Honeycutt, however, alleges that her need for leave was "unpredictable." (Compl. ¶ 9). The applicable regulation, therefore, would seem to be 29 C.F.R. § 825.303(a), which states:

> When the approximate timing of the need for leave is not foreseeable, an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case. It is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible. In the case of a medical emergency requiring leave because of an employee's own serious health condition or to care for a family member with a serious health condition, written advance notice pursuant to an employer's internal rules and procedures may not be required when FMLA leave is involved.

The County has not addressed this regulation.

Thus, Honeycutt's noncompliance with the MOU call-in procedure does not preclude her from maintaining a suit against the County because it is not clear as a matter of law that the County was permitted to mark her absences as "unexcused." To the extent the County's motion claims that it does, the motion is denied.

V

The sole reason the County advances in support of its motion for summary judgment is that both parties concede that Honeywell did not comply with the MOU call-in procedure. (County Br. at 13). Given my ruling above, this is not a sufficient basis on which to grant summary judgment in favor of the County.

In sum, the County's motion to dismiss is granted with respect to Honeycutt's assertion that she was entitled under the FMLA to be transferred to a more accommodating position. As to all other arguments the County advances, the motion is denied. A separate order implementing these rulings follows.

Date: July, 7 2006                              /s/

                                              J. Frederick Motz

                                              United States District Judge