IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LORETTA A. HONEYCUTT | * | |
| | * | |
| v. | * | Civil No. JFM-06-0958 |
| | * | |
| BALTIMORE COUNTY, MARYLAND | * | |
| | * | |
| | * | |
| | ***** | |

MEMORANDUM

Plaintiff Loretta A. Honeycutt ("Honeycutt") filed this action against defendant

Baltimore County, Maryland ("the County") alleging that her termination from the County's

Bureau of Corrections violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601

*et seq.* Now pending before me is the County's motion for summary judgment. For the reasons

that follow, the motion is granted.

I.

Honeycutt began working for the Bureau of Corrections as an office assistant in 1995.

(Honeycutt Dep. at 30, Ex. to Pl.'s Opp'n Mem.) On September 10, 2002, Honeycutt's son was

killed by police officers after he murdered his common law wife. (*Id.* at 67.) These deaths

caused Honeycutt to suffer severe depression and posttraumatic stress disorder. (Letter from Dr.

Khin M. Tun to James O'Neal (Dec. 11, 2003), Ex. to Pl.'s Opp'n Mem.) Honeycutt began a

leave of absence and did not return to work until November 6, 2002. (Honeycutt Dep. at 45, Ex.

to Pl.'s Opp'n Mem.)

While Honeycutt was away from work, Sharon Tyler, the program manager at the Bureau

of Corrections, called to discuss Honeycutt's FMLA rights and mailed her an FMLA application.

(Tyler Decl. ¶ 4, Ex. to Def.'s Mem.)  Honeycutt applied for FMLA leave on October 25, 2002.

(FMLA Request, Ex. to Pl.'s Opp'n Mem.)  Nearly a month later, however, Tyler alerted

Honeycutt that the County had not yet received the medical certification in support of her FMLA

application.  (Tyler Decl. ¶ 5, Ex. to Def.'s Mem.)  Tyler further advised Honeycutt that she had

until December 4 to submit the certification and explained that without it Honeycutt would be

marked absent for any missed time and could be suspended or terminated.  (Mem. from Sharon

Tyler to Loretta Honeycutt (Nov. 22, 2002), Ex. to Def.'s Mem.)

Honeycutt subsequently filed her first medical certification form, but her doctor failed to

request intermittent leave.  (FMLA Certification, Ex. to Def.'s Mem.)  As a result, Jo Anne

Krach, the County's chief of personnel records management, spoke with Honeycutt by phone

about the need to obtain additional certification regarding such leave.  (Krach Decl. ¶¶ 11-12,

Ex. to Def.'s Mem.)  On April 4, 2003, Honeycutt submitted the revised certification, in which

her physician wrote that intermittent leave was necessary and that Honeycutt could be late one to

two hours or miss one to two days on each occasion.  (*Id.* ¶ 12.)

The revised certification did not discuss whether Honeycutt could comply with the

County's notification procedures on the days when she would be late or absent.  Krach therefore

sent an email to Honeycutt requesting additional details from her doctor regarding Honeycutt's

ability to follow the County's notification policies and the anticipated frequency of Honeycutt's

intermittent leave.  (Email from Jo Anne Kincer to Loretta Honeycutt (May 2, 2003), Ex. to

Def.'s Mem.)[1]  Krach also reminded Honeycutt how much FMLA leave remained and urged her

to call or email with any further questions.  (*Id.*)

---

[1] At the time of the email, Krach's last name was Kincer.

The notification policy to which Krach referred mandated that all employees unable to work on any given day notify their supervisors at least one hour prior to the beginning of their shift. (Sick Leave Usage Policy at 2, Ex. to Def.'s Mem.)  In addition, pursuant to the agreement entered into between the County and Honeycutt's union, employees who missed work because of illness or injury were required to call their supervisor within one hour prior to, or one-half hour after, the beginning of the employee's shift, unless a documented emergency justified further delay. (Mem. of Understanding at 19, Ex. to Def.'s Mem.)  Failure to adhere to these guidelines resulted in an unauthorized absence. (Sick Leave Usage Policy at 2, Ex. to Def.'s Mem.)

Honeycutt's depression and posttraumatic stress disorder made it difficult to comply with these requirements. (Honeycutt Dep. at 63, Ex. to Pl.'s Opp'n Mem.)  Because the onset of her condition was unpredictable, Honeycutt wished to instead call a twenty-four-hour Central Control line to report her absences as the need arose.  According to Honeycutt, however, after her son's death, while all other Bureau of Corrections employees continued to utilize the Central Control line, she was required to speak with her supervisor directly each time she could not work. (*Id.* at 56.)  One supervisor, George Jackson, allegedly left Honeycutt on hold when she called in and marked her absent for being just five minutes late. (Sheridan Dep. at 17, 44-45, Ex. to Pl.'s Opp'n Mem.)  Jackson, who resigned in March 2003, apparently disliked Honeycutt because she had gone over his head on a project sometime in the past. (*Id.* at 15, 17; Tyler Decl. ¶ 7, Ex. to Def.'s Mem.)

Aside from Jackson, however, other County employees attempted to help Honeycutt cope with the depression and posttraumatic stress disorder that resulted from the loss of her son.  For instance, so that she could more easily transport her remaining children to and from school, the

County altered Honeycutt's starting time and allowed her to use her lunch hour at the end of the day.  (Tyler Decl. ¶ 6, Ex. to Def.'s Mem.; Richardson Decl. ¶ 5, Ex. to Def.'s Mem.)  Other concessions included permitting Honeycutt to work extra hours in order to accrue compensatory leave time, granting her extensions for the submission of FMLA paperwork, and providing her with alternate contact information – including her program manager's home phone number – for requesting leave.  (Krach Decl. ¶ 13, Ex. to Def.'s Mem.; Richardson Decl. ¶ 4, Ex. to Def.'s Mem.)

Despite these accommodations, Honeycutt not only exhausted her FMLA leave but also amassed dozens of unexcused absences where she either missed work entirely or arrived late.[2] (Krach Decl. ¶ 22, Ex. to Def.'s Mem.; Krach Decl. ¶ 12, Ex. to Def.'s Reply Mem.) Honeycutt's unexcused absences initially resulted in three and five-day suspensions.  After Honeycutt's poor attendance persisted, the County terminated her on November 24, 2003. (Siakor-Sirleaf Decl. ¶¶ 10-11, Ex. to Def.'s Mem.)

Honeycutt filed this action over two years later on April 14, 2006.  She alleges that the County violated the FMLA by refusing to transfer her to a more accommodating position, by imposing upon her "extraordinary requirements" for reporting her absences, and by suspending and later firing her in retaliation for taking leave.  (Compl. ¶ 13.)  On July 7, 2006, I dismissed the first of these assertions but permitted the other claims to proceed.  *Honeycutt v. Balt. County*, Civil No. JFM-06-0958, 2006 WL 1892275 (D. Md. July 7, 2006).

_____

[2] At first, the County maintained that Honeycutt was absent or late for work on forty occasions.  (Def.'s Mem. at 6-7.)  The evidence submitted in support of the County's reply memorandum, however, lists forty-eight such instances.  (Krach Decl. ¶ 12, Ex. to Def.'s Reply Mem.)  This discrepancy does not affect the resolution of the County's motion for summary judgment.

The parties have since completed discovery, and the County now moves for summary judgment. It argues that it did not willfully violate the FMLA and that consequently Honeycutt's action is barred by the two-year statute of limitations. (Def.'s Mem. at 3.) Although I previously found Honeycutt's allegations sufficient to withstand a motion to dismiss, the record now shows no willfulness on the County's part, and therefore I agree that the limitations period has run. Thus, there is no need to address the County's additional contentions.[3]

II.

Motions for summary judgment should be granted when the record establishes that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law of the cause of action determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The existence of other factual disputes between the litigants does not defeat an otherwise proper motion for summary judgment if none of the material facts are in dispute. *Id.* A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* In analyzing whether a genuine issue of material fact exists, the evidence and reasonable inferences from that evidence must be viewed in the light most favorable to the nonmoving party. *Id.* at 255.

---

[3] Even if I reached the merits of Honeycutt's claims and found that the evidence supported a prima facie case of retaliation, it is unclear whether Honeycutt could ultimately demonstrate that the County's non-discriminatory explanation for her termination – excessive absences and tardiness – was pretext for FMLA retaliation. *See Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502 (4th Cir. 2001) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-06 (1973)).

In general, FMLA claims are subject to a two-year statute of limitations.  29 U.S.C. §

2617(c)(1).  For willful violations of the FMLA, the limitations period extends to three years.  *Id.*

§ 2617(c)(2).  Because Honeycutt filed her Complaint more than two years after her termination,

this action is barred unless the record demonstrates a willful violation by the County.

The term "willful," which the FMLA leaves undefined, has been interpreted to mean

where the employer "'knew or showed reckless disregard for the matter of whether its conduct

was prohibited by the [Act].'"  *See Settle v. S.W. Rodgers, Co.*, 998 F. Supp. 657, 663 (E.D. Va.

1998) (alteration in original) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 130, 135

(1988)); *see also Passauer v. Quest Diagnostics, Inc.*, No. Civ. CCB-03-159, 2004 WL 865829,

at *2 (D. Md. Apr. 22, 2004).  Courts applying this standard have required more than mere

negligence, *see Porter v. N.Y. Univ. Sch. of Law*, 392 F.3d 530, 531-32 (2d Cir. 2004) (citing

*McLaughlin*, 486 U.S. at 135 n.13), and have found no willfulness where the employer granted

the employee's request for leave.  *See Samuels v. Kan. City Mo. Sch. Dist.*, 437 F.3d 797, 804

(8th Cir. 2006); *Edwards v. Ford Motor Co.*, 179 F. Supp. 2d 714, 719-20 (W.D. Ky. 2001).

Attempts to accommodate an employee's disability or condition also indicate a lack of

willfulness on the employer's part.  *See Samuels*, 437 F.3d at 804; *Passauer*, 2004 WL 865829,

at *2.  Moreover, an employer that supplies the necessary FMLA forms, follows up with the

employee regarding insufficient paperwork, and keeps the employee apprised of the

application's status cannot be said to have willfully violated the statute.  *See Porter v. N.Y. Univ.*

*Sch. of Law*, No. 99 Civ. 4693 (TPG), 2003 WL 22004841, at *6-8 (S.D.N.Y. Aug. 25, 2003);

*Edwards*, 179 F. Supp. 2d at 720.

In light of these precedents, I conclude that the County did not willfully violate the

FMLA and therefore Honeycutt's claim is barred.  As in the cases above, the County granted

Honeycutt's request for leave.[4]  Additionally, the County went to great lengths to accommodate

Honeycutt's condition.  For example, the County changed Honeycutt's starting time and allowed

her to take her lunch hour at the end of the day so that she could more easily transport her

children to and from school.  (Tyler Decl. ¶ 6, Ex. to Def.'s Mem.; Richardson Decl. ¶ 5, Ex. to

Def.'s Mem.)  The County also permitted Honeycutt to work extra hours in order to accumulate

compensatory leave time, granted her extensions for the submission of FMLA paperwork, and

gave her alternate contact information – including her program manager's home phone number –

for requesting leave.  (Krach Decl. ¶ 13, Ex. to Def.'s Mem.; Richardson Decl. ¶ 4, Ex. to Def.'s

Mem.)

The County helped Honeycutt complete the necessary FMLA forms and kept her

informed of her application's status.  Sharon Tyler called Honeycutt on October 2, 2002 to

discuss her FMLA options.  (Tyler Decl. ¶ 4, Ex. to Def.'s Mem.)  Tyler also mailed an FMLA

application to Honeycutt and later notified Honeycutt when she did not receive her medical

certification.  (Mem. from Sharon Tyler to Loretta Honeycutt (Nov. 22, 2002), Ex. to Def.'s

Mem.)  At that time, Tyler explained not only what was needed from Honeycutt, but also

reminded her of the consequences for failure to submit the required documentation.  (*Id.*)

Later, when the first medical certification form failed to request intermittent leave, Jo

---

[4] According to the County, Honeycutt exhausted her FMLA leave, with the exception of
two hours, by June 12, 2003.  (Krach Decl. ¶ 22, Ex. to Def.'s Mem.)  On the other hand, in an
unemployment benefits proceeding held after Honeycutt's termination, a hearing examiner found
that Honeycutt had used all FMLA leave by May 22, 2003.  (Unemployment Decision at 2, Ex.
to Def.'s Mem.)  Whether Honeycutt exhausted her leave in May or June 2003 is immaterial,
because in either event the County clearly granted Honeycutt her FMLA leave.

Anne Krach spoke with Honeycutt about the need to provide additional information pertaining to such leave.  (Krach Decl. ¶¶ 11-12, Ex. to Def.'s Mem.)  Krach also sent an email to Honeycutt requesting further details from her doctor regarding her need for intermittent leave and asking whether she could comply with the County's notification procedures.  (Email from Jo Anne Kincer to Loretta Honeycutt (May 2, 2003), Ex. to Def.'s Mem.)  Krach's email outlined the amount of FMLA leave remaining and recommended that Honeycutt contact her with any questions.  (*Id.*)

The foregoing evidence belies any suggestion that the County willfully violated the FMLA, particularly given the paucity of other FMLA complaints against the County.  The County typically receives hundreds of FMLA applications each year.  (Krach Decl. ¶ 5, Ex. to Def.'s Mem.)  Only a handful of employees, however, have filed internal grievances alleging FMLA violations against the County, and no one other than Honeycutt has ever filed an FMLA action in state or federal court against the County.  (*Id.* ¶ 6; Nolan Decl. ¶¶ 2-5, Ex. to Def.'s Reply Mem.)  Such a record renders it unlikely that the County willfully violated the FMLA in Honeycutt's case.

Honeycutt's arguments to the contrary are unavailing.  For instance, she urges the Court to find a willful violation on the grounds that the County's correspondence was confusing and because certain County officials failed to investigate her claim that she was subjected to unfair reporting requirements.  (Pl.'s Opp'n Mem. at 17-18.)  Neither Honeycutt's confusion, nor the County's alleged negligence, however, evidences a willful violation of the FMLA.  *See Porter*, 392 F.3d at 531-32; *Edwards*, 179 F. Supp. 2d at 720 n.6.

The County's requirement that Honeycutt notify her supervisor of her absences within a

-8-

window of time each day also does not amount to a willful violation of the FMLA.  Although

Honeycutt argues that she should have been permitted to call the twenty-four-hour Central

Control line because her depression and posttraumatic stress disorder impeded her ability to

contact her supervisor, she never offered medical documentation to that effect.  Furthermore, it is

unclear whether the County in fact permitted other employees to report their absences to the

Central Control line.  (Krach Dep. at 55, Ex. to Pl.'s Opp'n Mem.; Sheridan Dep. at 32, Ex. to

Pl.'s Opp'n Mem.)  Assuming that employees could report their absences in this manner, it is

important to note that one of Honeycutt's coworkers testified that whenever she missed work,

she notified both Central Control and her supervisor.  (Sheridan Dep. at 34, Ex. to Pl.'s Opp'n

Mem.)  The fact that this coworker contacted her supervisor on each occurrence suggests that the

County did not willfully violate the FMLA when it required Honeycutt to do the same pursuant

to its internal policy and the agreement with Honeycutt's union.

Finally, I find unpersuasive Honeycutt's conclusory assertion that her superiors

manipulated her and treated her cruelly.  (Pl.'s Opp'n Mem. at 18.)  She avers that her supervisor

George Jackson, to whom she was to report her absences, would "maliciously and purposefully

leave her on hold, sometimes for up to fifteen minutes." (*Id.*)  Honeycutt fails to support this

allegation with references to the record, but a coworker confirmed that Jackson was not

particularly compassionate toward Honeycutt, occasionally left her on hold when she called in,

and marked her absent for being just five minutes late.  (Sheridan Dep. at 17, 44-45, Ex. to Pl.'s

Opp'n Mem.)

This evidence, however, does not prove that the County willfully violated the FMLA.  As

an initial matter, Jackson's hostility toward Honeycutt did not stem from her leave of absence,

but instead related to an earlier project in which Honeycutt had embarrassed him.  (*Id.* at 15, 17.)

Jackson also resigned in March 2003 and therefore played no role in the decision to terminate

Honeycutt in November of that year.  (Siakor-Sirleaf Decl. ¶¶ 5, 8, Ex. to Def.'s Mem.)  At most,

the record discloses that for a period of time, one of Honeycutt's supervisors disliked her for

reasons unrelated to her FMLA leave.  This is not tantamount to a willful violation by the

County.[5]

Accordingly, the County's motion for summary judgment is granted.  A separate order

follows herewith.

Date: June 18, 2007                                    /s/

                                                       J. Frederick Motz
                                                       United States District Judge

---

[5] I noted in my previous opinion that if it was determined later that the County had not
acted willfully, the issue of whether Honeycutt was an intended beneficiary of a tolling
agreement between the Department of Labor and the County would need to be resolved.
*Honeycutt*, 2006 WL 1892275, at *2 n.4.  However, I need not consider that issue here because
in her memorandum opposing summary judgment, Honeycutt makes no attempt to avail herself
of the agreement.